HIRAM PEEK AND JOHN PEEK V. JAMES M. PEEK AND
GEORGE PEEK.

*Equity—Rescission of deed—Parent and child—Undue influence.*

Complainants, as two of the five heirs of their mother, filed a bill
    to set aside a quitclaim deed given by them to their father of
    their interest in a farm which he purchased and paid for, but
    the legal title to which was taken in the name of their mother,
    and of which she died seized. The bill charges that the deed
    was never intended to pass title; that it was given by com-
    plainants upon the representation by their father that one of
    their sisters had agreed to quitclaim her interest in the land
    for a given sum, a large portion of which she had received,
    but that she refused to execute a deed unless complainants
    released their interest, and that he desired their deed to show
    to their sister, and thereby induce her to perform her agree-
    ment, and that, after using it for that purpose, he would
    destroy the deed. And it is held that, while equity usually
    refuses to aid parties to such transactions, the evidence in this
    case tends to show a degree of ascendency over the complain-
    ants, growing out of the parental relation, which, together
    with the circumstances under which they lived (complainants,
    although of full age, living with their father at the time), puts
    the case upon a little different footing from those where the
    parties are equals; that the circuit judge, who saw the wit-
    nesses, was impressed by the fact that, as between the parties,
    the equities were strong in favor of the complainants, and the
    Court are not disposed to disturb his decree.

Appeal from Ingham.    (Person, J.)    Argued June 7,
1894.    Decided June 26, 1894.

Bill to set aside a deed on the ground of fraud, and
for an accounting.    Defendants appeal.    Decree affirmed.
The facts are stated in the opinion.

*John M. Corbin,* for complainants.

*Lawton T. Hemans (Smith, Lee & Day,* of counsel), for
defendants.

HOOKER, J. For many years previous to November 27, 1880, the defendant James M. Peek, and his wife, Ann Peek, lived upon the premises in controversy, which constituted their homestead. The land was purchased by the defendant, and title taken in the name of Ann Peek. The consideration seems to have been paid by defendant, and he afterwards made substantial improvements in the way of buildings. On the day above mentioned, Ann Peek died, leaving five children of herself and the defendant, of whom the complainants were two. There was another son, George, who was younger, and two daughters, who were older. The daughters were married, and lived with their husbands. At the time of their mother's death the complainants were aged, respectively, 27 and 25 years, and had always lived with their father, the defendant, upon the premises. On February 22, 1881, the complainants executed a life lease of the premises to their father at his request. An administrator of the wife's estate was appointed, and in May, 1881, the complainants and their father went to the residence of Alvira J. Tallman, one of the daughters, who lived in an adjoining township, where a difficulty occurred, ending in a prosecution for assault and battery. Finally the parties arranged the matter, and upon May 21, 1881, Alvira deeded her interest to the defendant for $525. This deed was witnessed by one of the complainants, and the mortgage which defendant gave to Mrs. Tallman for a portion of the consideration bore the signature of the other complainant as a witness. She testified that the boys (these complainants) had previously signed a life lease, but that she was never asked to do so. She stated further that upon that day the complainants signed a paper to allow defendant the same amount for building the house, out of their respective shares, as she did, which we understand was $100. No such paper appears in the

101 MICH.—20.

record, unless it be the following, which bears that date:

"To Huram Bristol,

"Administrator of the Estate of Ann Peek, Deceased:

"This· is to certify that all matters in controversy in · relation to the above estate are amicably settled by the heirs of said estate, and we desire that no further business be done or expense made, as all costs made to date will be paid within 30 days.

"*Mason, May 21, 1881.*

[Signed]  "Hiram Peek.
              "John Peek.
           . "Alvira J. Tallman."

This writing was delivered to the father upon that day.

On the 16th day of August following, the complainants executed, and allowed the defendant to take into his possession, a quitclaim deed of their interest in the land, and he recorded it in November, 1881. The bill is filed to set aside this deed, it being claimed by the complainants that the deed was never intended to pass title, but that it was made upon the representation by the defendant that Mrs. Tallman had agreed to quitclaim her interest for $525, and had received a large portion of the purchase price, but that she refused to execute a deed unless the boys did, and that he wanted this deed to show her, so that she would deed her interest as she had agreed to do, and that, after using complainants' deed for that purpose, he would destroy it.    Defendant claims that the deed was made to convey to him complainants' interest, and that no such· representation or agreement was made.    On August 20, 1881, the other daughter, Mrs. Reeves, who resided in Isabella county, quitclaimed her interest to her father. She testified as follows:

"Well, he came to my place, and my husband was called away.    After he went away he says to me, 'Mary, I will come out there if you will sign this life lease.' Says I, 'No, pa; I don't want to.'    Says he, 'You will be

sorry, Mary, if you don't.' Those were the words. He said he could throw me and my husband out in the road before the next morning if he had a mind to do so. I finally signed it rather than to have myself put out in the road. He said I was signing a life lease, and I did not know that I signed a quitclaim deed. He discharged a mortgage for $150, which he had on my husband's farm, which he agreed to do if I would sign the life lease, but, if not, he could make me trouble. He said my brothers would sign it when he got back home."

On August 29, 1881, the four children mentioned signed and delivered to the defendant a receipt as follows:

"Received of James M. Peek the full amount due me from the estate of Ann Peek, late of Aurelius, Ingham county, deceased, in consideration of which I do hereby sell, assign, transfer, and set over to the said James M. Peek my entire portion, distributive share of said estate, of every kind and nature whatsoever.

"Dated August 29, 1881.

"JOHN PEEK.
"HIRAM PEEK.
"MARY REEVES.
"ALVIRA J. TALLMAN."

On March 19, 1882, the father, James M. Peek, married his present wife, with whom he has resided upon the land in question to the present time. On November 8, 1882, complainant Hiram Peek employed a lawyer, Mark S. Wolcott, now of Jackson, Mich., to prepare a contract between his father and stepmother and himself, which was accordingly prepared by Mr. Wolcott, and signed by the parties, by the terms of which, after reciting that James M. Peek and Minerva Peek were the owners of the land described, it was provided that Hiram Peek should go upon the land, and assist his father in paying the debts, care for his father and mother, and work upon the farm for 10 years, and upon the expiration of the 10 years, November 8, 1892, he should have a deed of the land in question. On November 24, 1882, complainant Hiram

Peek was married, and did not live at his father's home
to speak of after that date.    March 14, 1884, James M.
Peek made a conveyance to his wife, Minerva Peek, of a
life estate in said lands, to commence after his death,
provided she survived him, which instrument was recorded
October 29, 1884.    Mrs. Peek, the wife, disclaimed at the
trial any interest by this instrument, and again by dis-
claimer filed in this case.    Administration of the estate of
the mother was applied for by the daughter Alvira J.
Tallman.    Mr. Bristol, the administrator, and the justice,
Mr. Day, who prepared the conveyances, and before whom
the settlement was negotiated on May 21, 1881, both died
before the commencement of this suit.    Mr. Day died in
the year 1884.

The bill was filed in December, 1891.    The decree of
the circuit court sustained the claim of the complainants,
upon the theory that the defendant James M. Peek in
some way, not clearly shown, obtained from his sons a
valuable piece of property without consideration, and that
a court of equity would not inquire with too much par-
ticularity whether this was done by fraudulently recording
a deed never intended to pass title or by unduly taking
advantage in some other way of the natural trust relation
existing between parent and child.    In his finding he adds:

" Even if the boys made the deed to assist in defraud-
ing their sister, which is not the theory of their bill, they
were not in equal wrong with their father, and the father
should not in that case be permitted to enjoy the fruits
of the wrong which he himself persuaded them into."

It is impossible to read this record without concluding
that the defendant James M. Peek had a strong influence
over his children, though they were adults, and that he
lost no time after the death of Ann Peek in securing the
title to the premises, though at the same time he was
owner of other lands.    He imposed upon Mrs. Reeves, if

she is to be believed, and brought sufficient pressure upon Mrs. Tallman to bring about a fight with her husband, which led to the arrest of the complainants, who were championing their father's cause; he told Mrs. Russell of a scheme by which he designed to obtain the interest belonging to his minor son, George, of whom he was guardian; and we are disposed to credit the statements of the complainants about the method taken to obtain their deed. It is plain enough that he did not want it to show Mrs. Tallman, for she had deeded nearly three months before.

It must be admitted, however, that the complainants do not come here with perfectly clean hands, in view of the admitted object upon their part in giving the deed. On the other hand, it shows a deeper degree of craftiness upon the part of the father, who seeks to put up the bars behind him, when · he gets this deed, by pretending that he wants it for a fraudulent purpose, to which he thereby ostensibly makes them a party. So much abhorrence has equity to such transactions that it usually refuses to aid parties who are connected with them. In this case, however, the evidence tends to show a degree of ascendency over the complainants, growing out of the parental relation, which, together with the circumstances under which they lived, puts the case upon a little different footing from those where the parties are equals. The circuit judge, who saw the witnesses, was impressed by the fact that, as between the parties, the equities were strong in favor of the complainants, and we are not disposed to disturb his decree.

The decree of the circuit court in chancery will be affirmed, with costs.

Long and Grant, JJ., concurred with Hooker, J. Montgomery, J., concurred in the result. McGrath, C. J., did not sit.